UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SANTA FE MEDICAL GROUP, a
LIMITED LIABILITY COMPANY,                      Case No. 15-11247-t11

      Debtor.

Jointly administered with:

ATRINEA RUIDOSO, LLC,                            Case No. 15-11248 t11
ATRINEA HEALTH, LLC,                             Case No. 15-11250 t11
CORAZON FAMILY HEALTH, P.C.,                     Case No. 15-11252 t11

      Debtors.

UNSECURED CREDITORS COMMITTEE,
on behalf of Debtors,

      Plaintiff,

v.                                               Adv. No. 15-1085 t

PHILIP BRIGGS, M.D., and
UNITED STATES OF AMERICA
INTERNAL REVENUE SERVICE,

      Defendants.

## **MEMORANDUM OPINION**

Before the Court is Plaintiff's Application for Temporary Restraining Order, seeking to enjoin Defendant from spending a tax refund that allegedly is estate property. The Court held an evidentiary hearing on the application on December 10, 2015. After considering the evidence, arguments, and applicable law, the Court concludes that injunctive relief should be granted.

The Court finds the following facts:[1]

Defendant, a physician and entrepreneur, formed a number of medical groups between 1993 and 2013.  He is the majority owner of Santa Fe Medical Group; the owner of Atrinea Health; LLC; the 50% owner of Atrinea Ruidoso, LLC; and the owner of Corazon Family Health, P.C.  The entities are all debtors in these jointly administered cases.  Until very recently, Defendant earned a salary and/or took distributions from the Debtors.  All four entities filed Chapter 11 petitions on May 14, 2015.

At the time of formation, Defendant elected to treat each business as a pass-through entity for tax purposes.  Defendant's tax returns reflect each entity's profits and losses, to the extent of his ownership interest, as well as his personal income and deductions.

Defendant's 2012 tax return shows tax payments of $248,979 and a refund due of $122,014.  His 2013 return reports payments of $220,802 and a $65,831 refund.  Defendant paid all or most of the tax payments with salary and distributions from the Debtors.  It is unclear whether Defendant used his salary or the distributions to make estimated tax payments.

Only Atrinea Ruidoso, LLC's articles of organization address the tax liability of members.  Section 7.2 of the articles states:

> The amount of tax which is required to be paid or withheld by the Company with respect to any Member's allocable share of the income of the Company shall be assessed to such Member, who shall pay the same to the Company or the taxing authority forthwith upon demand of the Manager.  The Manager may in his discretion set off any such tax against any amounts otherwise distributable to a

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa.  The Court makes these findings solely for the purpose of ruling on the Application. In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket").

Member under this Operating Agreement. Each Member hereby indemnifies the Company and every other Member and agrees to hold them harmless from any liability or loss they might incur by virtue of any such tax with respect to such Member's allocable share of the income of the Company.

The governing documents of the other Debtors do not address whether they should or must make distributions to owners to pay tax obligations.

In 2014 the Debtors had net operating losses of about $800,000. Defendant used those losses to obtain refunds of taxes paid in 2012 and 2013. Defendant received two refund checks, totaling about $396,000, in early December 2015 (together, the "Refund").[2]

Of Defendant's claimed 2014 tax losses, 99.2% are attributable to the Debtors' losses, and 0.8% are attributable to his personal losses and deductions.

Debtors' current management terminated Defendant's employment in early December 2015. He currently is looking for a job. Defendant's monthly expenses are about $18,500. This includes rent, utilities, insurance, and court-ordered alimony payments but does not include ongoing professional fees. The fees could be substantial. Currently, Defendant owes his lawyers and accountants about $40,000.

Defendant's ex-wife has a $1.8 million judgment against him. Defendant has paid her through 2017 on her claim. Pursuant to a stipulated judgment, the ex-wife has agreed that the Refund belongs to Defendant. Defendant may have also guaranteed the loans to the Debtors—as many owners do—but there was no evidence on that issue. Similarly, there is no evidence about the Defendant's other debts.

Defendant has about $92,000 in savings, which he estimates is enough for about five

---

[2] Defendant also received an IRS tax refund of $114,000 in November 2014. The particulars about that refund are unclear. Defendant contributed most of it to the Debtors. It is unclear whether the Refund amount is correct; counsel for the IRS had no record of the checks sent to Defendant in December 2015.

Case 15-01085-t    Doc 11    Filed 12/17/15    Entered 12/17/15 10:51:25 Page 3 of 12

months of living expenses.  Thereafter, Defendant will be unable to pay his bills unless he gets a new job or spends the Refund.

The Defendant could not commit to segregating the Refund until its ownership has been determined.  He and his counsel are concerned about unexpected expenses and payment of current and future professional fees.  They also maintain he is entitled to spend the money.

Based on the current record, the Court finds Defendant is insolvent.  Given the size of Defendant's obligations to his ex-wife and others, and the other facts outlined above, it is unlikely Defendant would be able to replenish the Refund if the Court ruled in Plaintiff's favor but the Refund had already been depleted.

## II.     DISCUSSION

Plaintiff argues that because Defendant used the Debtors' funds to make his 2012 and 2013 estimated tax payments, and because 99.2% of the Refund is attributable to the Debtors' net operating losses, the Debtors own 99.2% of the Refund.  Plaintiff asks the Court to enjoin Defendant from using the Refund until the Court determines whether it is owned by Defendant or the Debtors.  The Debtors and the U.S. Trustee support Plaintiff's request for preliminary injunctive relief.

Defendant disagrees, arguing that because he elected to treat the Debtors as pass through entities, he owns any refunds stemming from the Debtors' net operating losses.  Defendant also argues that no preliminary injunction should be issued because, inter alia, Plaintiff is not likely to succeed on the merits.

### A.     Temporary Restraining Order Versus Preliminary Injunction.

Plaintiff asked for a temporary restraining order, which under F.R.Civ.P. 65(b) typically lasts for 14 days pending the preliminary injunction hearing.  However, where the opposing party

-4-

receives notice and a hearing is held, courts may treat an application for a temporary restraining order as a motion for a preliminary injunction. *See* 11 Wright & Miller, Federal Practice and Procedure, § 2951 ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements."); *Klinke v. Bannister,* 2013 WL 6120437, * 4 (D. Nev. 2013) ("[I]t is appropriate to treat a non-ex parte motion for a temporary restraining order … as a motion for a preliminary injunction.").

Treating Plaintiff's application for a temporary restraining order as a motion for a preliminary injunction is appropriate here. Defendant had notice of the application, retained counsel, filed an eight-page response, and presented evidence (his own testimony) at the December 10, 2015 hearing. Further, the Court will try the merits of the Refund ownership issue in eight weeks.

B.     Standard for a Preliminary Injunction.

"A preliminary injunction may be granted if the party seeking it shows: (1) a likelihood of success on the merits; (2) a likely threat of irreparable harm to the movant; (3) the harm alleged by the movant outweighs any harm to the non-moving party; and (4) an injunction is in the public interest." *Little Sisters of the Poor Home for the Aged, Denver, Colo. V. Burwell,* 794 F.3d 1151, 1174 (10th Cir. 2015).

In the Tenth Circuit, if factors (2) – (4) favor the movant, "then the first factor becomes less strict…[.] [I]nstead of showing a substantial likelihood of success, the party need only prove that there are 'questions going to the merits ... so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'"

*Prairie Band of Potwatomi Indians v. Pierce,* 253 F.3d 1234, 1246-1247 (10th Cir. 2001). The Court will therefore address the "merits" factor last.

The main purpose of a preliminary injunction is simply to preserve the status quo pending the outcome of the case. *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1185 (10th Cir. 1975). In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits. *Compact Van Equipment Co. v. Leggett & Platt, Inc.,* 566 F.2d 952, 954 (5th Cir. 1978).

        1.        Irreparable Harm.

"In federal courts, the moving party must show irreparable injury in order to obtain a preliminary injunction." *Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir. 1986) (quoting *Sampson v. Murray,* 415 U.S. 6 (1974)); *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1185 (10th Cir. 1975).

"Injury is generally not irreparable if compensatory relief would be adequate." *Tri-State Generation*, 805 F.2d at 355 (quoting *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472–73 (5th Cir. 1985)). "[E]conomic loss usually does not, in and of itself, constitute irreparable harm" because "such losses are compensable by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)). Thus, Plaintiff has to show not only that it would be injured if the injunction were not issued, but also that money damages would not be adequate compensation for the injury.

There is an insolvency exception to the general rule about economic loss: Irreparable harm may be found if the movant would be unable to collect a money judgment after prevailing on the merits. *Tri-State Generation*, 805 F.2d at 355 ("Difficulty in collecting a damage

-6-

judgment may support a claim of irreparable injury. … If [Movant] cannot collect a money judgment, then failure to enter the preliminary injunction would irreparably harm it."). *See also CRP/Extell Parcel I, L.P. v. Cuomo*, 394 Fed. Appx. 779, 781 (2d Cir. 2010) ("[W]e have held that a finding of irreparable harm may lie in connection with an action for money damages where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency."). "[T]he exception … is rooted in the fact that insolvency may render otherwise compensable harm irreparable because 'there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'" *Id.* at 782.

The Court concludes that Plaintiff and the Debtors' bankruptcy estates likely would suffer irreparable harm absent an injunction. Both Defendant and the bankruptcy estates claim ownership of the Refund. Based on the current record, the Court found the Defendant is insolvent. If the Refund were spent by the Defendant or seized by a creditor, the Plaintiff and the bankruptcy estates likely could never be made whole.[3] Where, as here, an insolvent defendant holds a fund whose ownership is in bona fide dispute, the plaintiff and the Court face the risk that no meaningful decision on the merits could be rendered because the fund might be spent or seized, and could not be replenished.

Defendant's testimony that he has no plans to spend the Refund cannot overcome the risk of harm. While it seems plausible that Defendant would not spend the Refund, he does have substantial cash needs and debts. Defendant's counsel represented he would spend the Refund if necessary. Further, Plaintiff alleges in its complaint that Defendant withdrew a substantial amount of money from the Debtors when they were experiencing financial difficulty. These

---

[3] This situation is quite different from a creditor-plaintiff asking the Court to tie up a debtor's money pending the outcome of a collection or avoidance action, so the creditor can win the "race to the courthouse." For a number of reasons, entry of a preliminary injunction in such cases would rarely if ever be appropriate.

facts make it imprudent to allow the Defendant to hold the Refund for the next eight weeks.

The Court concludes the irreparable harm prong favors Plaintiff.

> ### 2. Balance of the Harms.

The Court also rules that the harm Plaintiff might suffer if no injunction were issued outweighs any potential harm to Defendant caused by the requested injunction. As discussed above, the potential harm to the Plaintiff is the loss of some or all of the Refund. The Debtors' creditors could then receive about $400,000 less than they otherwise might.

The risk of harm to Defendant is low if the injunction is only issued for eight weeks. Defendant should have enough savings to pay his expenses during that time. He should also be able to find work soon. If Defendant encounters any unexpected expenses, he may file a motion asking the Court to release a portion of the Refund to him. The Court will hear any such request on short notice.

This prong weighs in favor of granting injunctive relief.

> ### 3. Public Interest.

Plaintiff, the Debtors, the Debtors' creditors, and the U.S. Trustee have an interest in preserving the Refund pending the outcome of the ownership dispute. Aside from the general bankruptcy policy of maximizing and preserving estate property, this matter does not affect the public interest. A preliminary injunction therefore would not be adverse to the public interest. *See Tri-State Generating*, 805 F.2d at 355 (the public interest prong requires that "the injunction, if issued, would not be adverse to the public interest").

> ### 4. Likelihood of Success on the Merits.

Since the other relevant factors favor injunctive relief, the relaxed standard for likelihood of success on the merits applies. Plaintiff must identify "questions going to the merits ... so

serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Prairie Band of Potwatomi Indians v. Pierce,* 253 F.3d 1234, 1246-1247 (10th Cir. 2001).

The issue presented is whether the Refund, attributable to the Debtors' net operating losses, belongs to the estate where, inter alia, Defendant made the estimated tax payments with salary and/or distributions paid by Debtors. To answer the question, the Court may have to resolve a potential conflict between tax law and bankruptcy law. Under tax law, when the pass-through election is made, net operating losses, the right to use them, and the resulting refund all belong to the owners of an entity. At least one bankruptcy court has ruled that the "tax benefits resulting from the NOL … would not be available to satisfy claims of corporation's creditors." *In re Forman Enterprises, Inc.,* 281 B.R. 600, 613 (Bankr. W.D. Pa. 2002). In *Forman,* the Chapter 7 trustee sought to recover tax refunds attributable to the debtor's NOLs from the corporate shareholders under an unjust enrichment theory. Pursuant to the governing documents, the shareholders paid the refunded taxes with distributions from the debtors. The court allowed the shareholders to keep the refunds on the grounds that the "debtor was merely a conduit through which the NOL and the right to use it passed to them." *Id.* at 612. Defendant urges the Court to follow this case. Plaintiff asserts *Forman* was wrongly decided, and also is distinguishable.

Under bankruptcy law, funds traceable to the debtor typically belong to the estate. Applying this principle, a bankruptcy court ordered the IRS to return funds to the debtor that represented unauthorized payments of the member-owners' tax liabilities. *In re KRSM Properties, LLC,* 318 B.R. 712 (9th Cir. BAP 2004). In *KRSM Properties,* the members used proceeds from the sale of the debtor's assets to pay their personal income taxes. The Ninth

Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's decision to require the IRS to turn the funds over to the Trustee. The court reasoned that the LLC is a separate legal entity from its owners regardless of the pass-through election, and that the LLC's property belonged to the estate.

Neither case is directly on point, and the law in this area is sparse and unsettled. Further, assuming without deciding that Plaintiff's tracing and other theories are viable, there are fact issues about whether, and to what extent, the Refund is traceable to the Debtors. For example, a portion of the money Defendant used to pay the 2012 and 2013 estimated tax payments is likely attributable to his salary. To the extent the salary was earned and was reasonable in amount, the Debtors' interest in the salary likely ended upon payment.

In sum, the Court concludes the dispute presents serious, substantial, difficult, and doubtful questions that require further investigation.

C.      Security.

F.R.Civ.P. 65(c) provides:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

Bankruptcy Rule 7065, which adopts Rule 65, authorizes the Court to excuse the trustee, debtor, and debtor in possession from the bond requirement.

Plaintiff asks the Court to waive this requirement because it is prosecuting this action on behalf of the Debtors pursuant to a court order. It is not clear the Plaintiff falls within the class of exempted parties on that basis. The Court need not decide the issue because the Tenth Circuit has held that "a trial court has 'wide discretion' under Rule 65(c) in determining whether to require security." *Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir.

2003) (quoting *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964)). A bond may be "unnecessary to secure a preliminary injunction if there is an absence of proof showing a likelihood of harm." *Coquina Oil Corp. v. Transwestern Pipeline Co.,* 825 F.2d 1461, 1462 (10th Cir. 1987). *See also Nokia Corp. v. InterDigital, Inc.,* 645 F.3d 553, 557 (2d Cir. 2011) (noting that the purpose of the bond requirement to "to protect his adversary from loss in the event that future proceedings prove the injunction issued wrongfully") (quotations omitted).

Here, there is no evidence that issuing a preliminary injunction for eight weeks will harm Defendant. He should be able to pay expenses during that time without using the Refund. Defendant may also file a motion at any time seeking to use a portion of the Refund if he incurs unexpected expenses. Consequently, the Court, in its discretion, concludes the bond requirement should be waived.

III.    CONCLUSION

After considering the relevant factors, the Court will issue a preliminary injunction pending its decision on the rightful ownership of the Refund. If Defendant needs to spend a portion of the Refund before the Court rules, he may file a motion and the Court will hear that issue on short notice.

A separate injunction order consistent with this opinion will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 17, 2015

Copies to:

Spencer Lewis Edelman & Paul Fish
P.O. Box 2168
Albuquerque, NM 87103

Denise J. Trujillo & Chris Solis
10400 Academy Rd NE, Ste. 350
Albuquerque, NM 87111

Steven Tal Young
20 First Plaza NW, Suite 500
Albuquerque, NM 87102

Alice Nystel Page
P.O. Box 608
Albuquerque, NM 87103